## THE HERCULES.

### STANDARD DREDGING CO. et al. v. NEW ORLEANS COAL & BISSO TOWBOAT CO.

(Circuit Court of Appeals, Fifth Circuit. March 14, 1927.)

No. 4847.

1. **Towage** 🖙6—**Tug held not chargeable with detention of tow before the latter was in fact ready to be towed.**

A tug engaged to tow a dredge from Colon to Port Arthur *held* not chargeable with detention of the dredge before the time the latter was in fact ready to proceed, though, if her master had been informed of the time the tug would arrive, she could and would have been ready.

2. **Towage** 🖙6—**Tug held not entitled to demurrage for delay due to its breach of contract for failure to employ wireless operator.**

A tug, engaged to tow a dredge on a sea voyage and required by the contract to furnish a wireless equipment for use of the dredge, but which was without an operator and refused to employ one, *held* not entitled to demurrage for delay caused by an unsuccessful attempt of the master of the dredge to compel compliance with the contract.

Appeal and Cross-Appeal from the District Court of the United States for the Western District of Louisiana; Benjamin C. Dawkins, Judge.

Suit in admiralty by the New Orleans Coal & Bisso Towboat Company, owner of the tug Barranca, against the dredge Hercules, the Standard Dredging Company, owner, and the United Dredging Company, lessee. From the decree, both parties appeal. Modified and affirmed.

Charles A. McCoy, of Lake Charles, La., and Maco Stewart and Brantly Harris, both of Galveston, Tex. (Stewart, Damiani & Harris, of Galveston, Tex., and McCoy & Moss, of Lake Charles, La., on the brief), for appellants and cross-appellees.

Luther E. Hall, of New Orleans, La. (Bond, Curtis & Hall and Henry B. Curtis, all of New Orleans, La., on the brief), for appellee and cross-appellant.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

WALKER, Circuit Judge. The appellee and cross-appellant, the owner of the tug Barranca, libeled the dredge Hercules for $6,300, the agreed price for towing the Hercules from Cristobal to Port Arthur, Tex., and $250 demurrage for delay caused by the dredge at Cristobal. The written contract for the towage service states that the Barranca was equipped with wireless, and contained provisions to the following effect: The owner of the dredge to give to the owner of the tug 10 days' notice of the date for the tug to be at Cristobal or Colon; the owner of the tug to be at the place named within 24 hours of the date stated in the notice given by the owner of the dredge; the dredge to have 24 hours after the tug's arrival at the place named in the notice; the owner of the dredge to pay for any further delay at the rate of $250 per day.

By answer and cross-libel the owner of the Hercules set up the claim that it was entitled to damages for the failure of the tug to be at Cristobal until July 15, 1924, though the notice given her owner on June 18, 1924, called for her being there on July 1, 1924. The court awarded to the owner of the Barranca $6,550, less a credit of $1,800 for damages caused to the owner of the Hercules by the delay of the Barranca in reaching Cristobal; the credit allowed being for delaying the Hercules 6 days. The owner of the Hercules appealed, and complains of the failure of the court to allow it a credit for 11 days' delay, and of the allowance of the item of $250 demurrage to the owner of the Hercules. The owner of the Barranca sued out a cross-appeal, and complains of the credit allowed to the owner of the Hercules. That the towage service contracted for was performed was not disputed.

The Hercules reached Cristobal on July 5th. During her towage from San Francisco to the Panama Canal her only lifeboat was so damaged as to be unfit for use, and while passing through the Canal she sustained damage which, though small, had to be repaired to make it safe for her to go to sea. The repairing of the lifeboat and of the dredge could have been completed several days prior to July 15th, but had not been completed when the Barranca arrived at Cristobal on that date, and those repairs were not completed · until late in the afternoon of July 16th. The Barranca, which, after being coaled, was alongside the Hercules in the afternoon of July 15th, had no wireless operator, and evidence in behalf of the Hercules was to the effect that the Barranca's wireless equipment was not in working condition. Upon the Barranca's master refusing to do what was required to have the use of her wireless during the towage, the master of the Hercules appealed to the collector for a ruling on the subject. The ruling of the collector that the law did not require the Barranca to have a wireless was made during the morning of July 17th, and the tug, with its tow, left Cristobal that afternoon.

[1] Demurrage being an allowance for damage caused by the detention of a vessel, a valid claim therefor does not accrue while the vessel is in port prior to her becoming ready to go to sea. The ground of liability for delaying or detaining a vessel is that the party sought to be charged with such liability caused or was responsible for such delay or detention, and that the delayed or detained vessel suffered loss, without fault imputable to it. A tug engaged to tow a dredge is not properly chargeable with detention of the dredge before the latter is ready to be towed. The fact that, if the master of the Hercules had been informed that the Barranca would reach Cristobal on or about July 15th, the Hercules prior to that date could and would have been made ready to go to sea, is not enough to make the Barranca chargeable for detaining the Hercules while the latter actually was not ready to be towed. We conclude that the court erred in allowing the above-mentioned credit to the owner of the Hercules.

[2] The terms of the towage contract show that it was contemplated that the Hercules was to have the benefit of the Barranca being equipped with wireless, with the result of means of calling for help being available in the event of any disabling accident or mishap at sea during the towage. When it was disclosed to the master of the Hercules that there was a noncompliance with the provision of the contract in that regard, it was not unreasonable for him to make an effort to obtain compliance with that provision. There was no lack of promptness or diligence in making that effort, which was unsuccessful, because the master of the Barranca refused to comply with the demand that the wireless be made available for use, and the official appealed to took no action, because the Barranca was not a vessel required by law to carry wireless equipment, and he was without authority or jurisdiction to enforce compliance with a contract provision on the subject. A consequence of the making of the effort to secure compliance with the contract provision as to wireless was that, instead of the Hercules being ready on July 16th, within 24 hours after the Barranca's arrival at Cristobal, she was not ready until the forenoon of July 17th. But for a fault chargeable against the Bar-

ranca there would have been no occasion for delaying until July 17th the beginning of the towage. It well may be considered .that the Barranca contributed to bringing about the delay in question, and that the master of the Hercules was justified in taking the time reasonably required to ascertain whether a compliance with the contract provision as to wireless could or could not be brought about. This being so, it was error to allow the demurrage item claimed by the owner of the Barranca.

Because of the above-mentioned errors, the decree appealed from is modified, by making the principal sum awarded to the libelant $6,300, without any credit or deduction. As so modified, the decree is affirmed; one-half of the court costs to be taxed against each of the parties.

Modified and affirmed.          -